

1

2

3

4

5

6                    UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
7                           AT SEATTLE

8 _____
                                        )
9 GAIL MICHELMAN,                       )        No. C10-0271RSL
                                        )
10                    Plaintiff,         )
                                        )
          v.                            )        ORDER GRANTING IN PART
11                                       )        LINCOLN'S MOTION FOR
   LINCOLN NATIONAL LIFE INSURANCE       )        SUMMARY JUDGMENT
12 COMPANY, *et al.*,                    )
                                        )
13                    Defendants.        )
   _____)

14

15        This matter comes before the Court on Lincoln National Life Insurance

16 Company's "Motion for Summary Judgment and for Judgment in Interpleader Pursuant to Fed.

17 R. Civ. P. 22." Dkt. # 9.

18                      **PROCEDURAL BACKGROUND**

19        On January 15, 2010, plaintiff Gail Michelman filed a complaint in King County

20 Superior Court seeking life insurance proceeds allegedly due and owing under a policy issued to

21 plaintiff's daughter, Elizabeth Michelman. Plaintiff alleges that Lincoln failed to investigate and

22 adjust her claim for life insurance benefits in the manner required by various state statutes and

23 regulations. She also asserts a claim for breach of contract based on Lincoln's failure to pay

24 benefits to the beneficiary designated under the policy. After the case was removed to federal

25 court, Lincoln filed its answer and a third-party interpleader complaint against Irwin Michelman,

26 plaintiff's ex-husband and the father of the decedent. Lincoln now seeks summary judgment on

1  all of plaintiff's claims and judgment in interpleader pursuant to Fed. R. Civ. P. 22 against Gail
2  and Irwin.

3  **FACTUAL BACKGROUND**

4      On March 24, 1999, Irwin submitted an application for a life insurance policy
5  covering Gail and Irwin's daughter, Elizabeth.  At the time, Elizabeth was eleven years old, and
6  the Michelmans were married.  Pursuant to the application, both Irwin and Gail were designated
7  as beneficiaries under the policy.  Irwin identified Gail as the "Owner" of the policy and himself
8  as "Contingent owner."  Although the form provided space for only one "Owner" and there was
9  no place to identify a "Primary owner," the application noted that:

10      If two or more Primary owners are named, complete special instructions and check
11          applicable block:

12      ☐ Joint owners with right of survivorship between them

13      ☐ Common owners with no right of survivorship between them
14  Irwin  checked the "Joint owners" box, but did not provide special instructions.  The life
15  insurance policy took effect on April 6, 1999.  On or about May 28, 1999, Lincoln generated a
16  "Policy Summary" that identified Gail as the "Primary Owner" and Irwin as the "Contingent
17  Owner."

18      Gail and Irwin divorced in 2001.  On February 14, 2002, Gail submitted a Change
19  of Beneficiary form pursuant to her authority as "Contract owner."  The change removed Irwin
20  as a beneficiary and added the couple's other daughter, Jessica.  Lincoln confirmed the change
21  of beneficiary in a letter dated February 25, 2002.  When Elizabeth turned twenty-one,
22  ownership of the policy passed to her as a gift.  No additional changes of ownership or
23  beneficiaries were made.

24      Lincoln was notified of Elizabeth's death on August 11, 2009, although it is not
25  clear from the record how or by whom the notice was provided.  On September 21, 1999, Irwin's
26  lawyer advised Lincoln that Elizabeth had died under suspicious circumstances, that her death

ORDER GRANTING IN PART LINCOLN'S
MOTION FOR SUMMARY JUDGMENT        -2-

was being investigated as a homicide, that the life insurance policy was a community asset of the Michelman marriage that had not been allocated in the divorce proceedings, that Gail's attempt to change the beneficiary violated their agreement, and that Lincoln had failed to raise the beneficiary issue with Elizabeth when she attained adulthood.  It does not appear that Gail was aware of any of these accusations or arguments.  Irwin requested that Lincoln withhold payments under the policy until the identified issues could be resolved.

On October 12, 2009, Lincoln contacted Gail, requesting that she submit a claim as the designated beneficiary of the policy and alerting her to Irwin's competing claim.  Lincoln admitted that the policy proceeds were due and payable and that Gail was the named beneficiary of the policy.  No explanation of Irwin's claim or the evidence in support thereof was provided.  Lincoln refused to determine which of the competing claimants had the better claim and gave the claimants thirty days in which to work out their differences, following which Lincoln would file an interpleader action to have the matter resolved in court.  Lincoln noted that "[t]he Interpleader rules are clear that we are entitled to take such action regardless of our opinion of the relative merit of your respective claims."

Gail immediately called the claims examiner handling the matter, but could not get any information regarding the nature of or basis for Irwin's claim.  On October 22, 2009, she submitted her formal claim, explained why she believed she was the only proper claimant, challenged the validity of any claim Irwin might have asserted, and again requested information regarding the grounds and proofs offered by her ex-husband to countermand the clear beneficiary designation in the policy.  When she got no response, Gail followed-up with another letter, dated November 17, 2009.  Gail noted that she had received correspondence from Irwin challenging Gail's designation as the beneficiary under the policy.  She sought copies of any correspondence Lincoln had exchanged with Irwin during the past month.

On November 19, 2009, Lincoln wrote to both Gail and Irwin, thanking them for their correspondence and asking that they come to a mutual agreement regarding the distribution

ORDER GRANTING IN PART LINCOLN'S
MOTION FOR SUMMARY JUDGMENT          -3-

of the proceeds.  Lincoln acknowledged that its records showed that Gail was the beneficiary for the policy, but noted Irwin's challenge to the 2002 beneficiary change.  Lincoln gave the parties until December 10, 2009, to resolve the dispute:  otherwise, the insurer would file an interpleader action.

Gail reminded Lincoln of its obligation to consider her interests to the same extent as its own.  She argued in a letter dated November 23, 2009, that forcing her to litigate an interpleader action when there was no plausible basis for Irwin's claims effectively shifts the insurer's burden of administering claims to her:

> Your last letter admits Lincoln intends on ignoring the plain language of its policy so it can avoid being sued by my ex-husband.  Lincoln has acknowledged me as the sole recorded beneficiary and yet it refuses to pay the policy benefits.  My ex-husband is not a beneficiary, he was removed from the policy years ago as provided by the policy itself.  It would be wrong if my ex-husband sued Lincoln. But it is more wrong for the insurance carrier to put its interest in not being sued over its obligation to pay as promised under the policy.

When no response was forthcoming, Gail filed a formal complaint with the Washington Office of Insurance Commissioner.

On December 9, 2009, Lincoln's Compliance Department acknowledged receipt of Gail's letter and indicated that it had requested additional information and would review the matter.  On December 16, 2009, apparently unbeknownst to Gail, Irwin's lawyer sent a letter to Lincoln indicating that the King County Medical Examiners Office had reopened its investigation into the death of Elizabeth.  On January 5, 2010, Gail faxed Lincoln a letter demanding that Lincoln state what additional information it needed to complete its compliance review and when the decision would be made.  She also requested a full and complete copy of her claim and all investigative and supplementary material associated with the claim.  Gail gave Lincoln until January 8, 2010, to pay the benefits or provide the requested information.  Having received no response, plaintiff filed suit on January 15, 2010.

ORDER GRANTING IN PART LINCOLN'S
MOTION FOR SUMMARY JUDGMENT          -4-

**DISCUSSION**

Lincoln's motion raises two distinct issues.  The first involves the propriety of an interpleader action in the circumstances described above.  The second involves the scope of the relief available in such a proceeding.  Both issues are addressed below.

**A. PROPRIETY OF INTERPLEADER ACTION**

Fed. R. Civ. P. 22 allows a party facing the potential of multiple liabilities to join as adverse parties all persons holding claims and to require them to interplead.[1]  Both Gail and Irwin claim a right to all or a significant portion of the proceeds of the Lincoln policy.  Although the bald assertion of a claim against the policy, without any colorable support, is probably not enough to warrant an interpleader action,[2] in this case Lincoln had a good faith belief that it faced the potential of multiple liabilities, not just multiple claims.  Lincoln has, from the beginning, acknowledged that Gail's claim to the proceeds appears superior based on the underwriting file and policy documents.  Irwin, however, raised extra-policy challenges that had the potential of vitiating the acknowledged beneficiary designation and/or precluding payment to Gail entirely.  For example, the information Irwin provided regarding the divorce decree and the on-going investigation into the cause of Elizabeth's death raised the possibility that the designated beneficiary could be legally barred from recovering.  Because both parties had asserted claims that were at least colorable (*i.e.*, which "may expose [the insurer] to double or multiple liabilities" (Fed. R. Civ. P. 22(a)(1)), Lincoln was entitled to join Irwin for interpleader.

---

[1]  Lincoln has not asserted a claim under the federal interpleader statute, 28 U.S.C. § 1335.

[2]  See New York Life Ins. Co. v. Lee, 232 F.2d 811, 813 (9th Cir. 1956) ("There is no doubt but that an asserted adverse claim may be so wanting in substance that interpleader under the statute may not be justified."); Stuyvesant Ins. Co. v. Dean Constr. Co., 254 F. Supp. 102, 108 (S.D.N.Y. 1966) ("[A] mere naked claim without any color of support does not justify interpleader . . . ."). See also Minn. Mut. Life Ins. Co. v. Ensley, 174 F.3d 977, 981 (9th Cir. 1999) ("In light of Minnesota Mutual's good faith belief that it faced the possibility of multiple claims, it did not act unreasonably in failing to pay out Donald's claim.").

1    Gail argues that, no matter what arguments Irwin raised in support of his claim,

2 Lincoln could not have had a good faith basis to believe that his claim to the insurance proceeds

3 was viable because Lincoln failed to fully investigate Irwin's allegations.  Rule 22 does not

4 impose upon an insurer a duty to investigate the competing claims.  If claims are asserted that

5 "may expose [an insurer] to double or multiple liability,"  interpleader is proper.  In the

6 circumstances of this case, Lincoln properly interpled Irwin in the above-captioned matter.

7 **B. SCOPE OF RELIEF**

8    Lincoln argues that, once the interpleader is found to be proper and Lincoln places

9 the policy proceeds in the registry of the Court, the Court should dismiss Lincoln from this

10 action with an award of fees and costs.  The dismissal would, in effect, put an end to Gail's

11 underlying bad faith and breach of contract claims.  It would also cap Lincoln's liability at the

12 amount placed in the Court's registry.

13    In the context of this case, adopting Lincoln's argument would extend the

14 protections of interpleader far beyond its permissible limits.  The Court readily acknowledges

15 the many cases in which the initiation of an interpleader action results in the discharge of all

16 related claims.  See, e.g., Standard Ins. Co. v. Nelson, C07-0140RSM (W.D. Wash. May 17,

17 2007).  If, as Lincoln asserts, all of the asserted claims were based on Lincoln's refusal to pay

18 benefits to Gail upon demand, dismissal would be proper.  The interpleader procedure is

19 designed to relieve insurers of the risks associated with determining which claimant has the

20 better claim.  In order to retain the efficacy of this procedure, any cause of action that would

21 punish the insurer for initiating the interpleader instead of choosing between the claimants

22 should be dismissed.  The Prudential Ins. Co. of Am. v. Hovis, 553 F.3d 258, 265 (3d Cir. 2009).

23 Similarly, if a cause of action seeks recovery from the stake – in this case the insurance proceeds

24 – the action should be dismissed after the funds are placed in the registry of the Court.  Id., 553

25 F.3d at 264 ("Thus, the normal rule is that interpleader protection does not extend to

26 counterclaims that are not claims to the interpleaded funds.").

ORDER GRANTING IN PART LINCOLN'S
MOTION FOR SUMMARY JUDGMENT          -6-

1    In this case, however, Gail has asserted claims that are independent of Lincoln's

2 ultimate coverage decision (or lack thereof).  Gail's bad faith and Consumer Protection Act

3 claims are based primarily on Lincoln's failure to comply with the governing claims handling

4 statutes and regulations.  For example, Gail asserts that Lincoln failed to acknowledge and act

5 reasonably promptly on communications, failed to establish and follow policies regarding the

6 investigation of claims, refused to provide information and/or an explanation of its position as

7 requested, and compelled the insured to initiate litigation.  Gail filed suit regarding these alleged

8 wrongs on January 15, 2010.  The claims for violations of Washington's insurance law and the

9 Consumer Protection Act were independently actionable at the time suit was filed and do not

10 seek recovery of the insurance proceeds themselves:  the fact that Lincoln subsequently filed an

11 interpleader did not change the nature of Gail's bad faith claims or the remedy sought.  As was

12 the case in New York Life Ins. Co. v. Lee, 232 F.2d at 814, the insurer cannot refuse to

13 communicate with its insured, fail to process claims in a timely manner, force its insured to file

14 suit to obtain coverage, and then "by the mere deposit of the principal amount of cash surrender

15 value wash its hands of all other claims that may have accumulated in the interim."  See also Sun

16 Life Assur. Co. of Canada v. Thomas, 735 F. Supp. 730, 733 (W.D. Mich. 1990) (dismissal of

17 pending claims is appropriate "[a]bsent the presence of bad faith on the part of the stakeholder or

18 the possibility that the stakeholder is independently liable").

19    Gail's breach of contract claim is of a different kind.  That claim is based on

20 Lincoln's failure to pay the proceeds to Gail as the designated beneficiary of the policy and

21 seeks recovery of the interpleaded funds.  In effect, Gail is arguing that Lincoln should have

22 investigated the competing claims and chosen between the claimants rather than initiating an

23 interpleader action.  Given the nature of Irwin's arguments, Lincoln was unable resolve the

24 competing claims based on the information at hand and, if forced to do so, would have run the

25 risk of incurring duplicative liabilities.  Lincoln acted reasonably when it refused to pay the

26 proceeds to a person who might ultimately be shown not to have a valid claim.  See Ensley, 174

1   F.3d at 981.  In these circumstances, Lincoln satisfied its obligations under the contract (Id.) and

2   did not breach any legal duty by taking advantage of the Rule 22 procedure (see Hovis, 553 F.3d

3   at 265).  To hold otherwise would vitiate the interpleader procedure.

4   **C. RULE 56(F) REQUEST**

5          Gail argues that, if Lincoln's motion is not denied in its entirety, a Rule 56(f)

6   continuance is required.  Although no affidavit was provided, plaintiff states in her memorandum

7   that she intends to take discovery regarding the procedures Lincoln has implemented to

8   investigate and resolve disputes over life insurance proceeds between ex-spouses, the steps it

9   took to investigate Irwin's claim, and the underwriting file.  This information may be relevant to

10  Gail's bad faith and Consumer Protection Act claims, but it cannot save her breach of contract

11  claim.  No continuance is necessary.

12                              **CONCLUSION**

13         For all of the foregoing reasons, Lincoln's motion for summary judgment and

14  judgment in interpleader is GRANTED in part and DENIED in part.  Lincoln appropriately

15  joined Irwin in this action under Rule 22, thereby requiring Gail and Irwin to interplead.  Gail's

16  breach of contract claim, which seeks to recover the interpleaded funds and is based on

17  Lincoln's decision to proceed via interpleader rather than choosing between the competing

18  claimants, is DISMISSED.  Plaintiff's independent bad faith and Consumer Protection Act

19  claims may proceed.  Lincoln's request for injunctive relief is DENIED.  Lincoln's request for

20  fees is DENIED as premature.

21

22         Dated this 9th day of August, 2010.

23

24         _MNT S Lasnik_
           Robert S. Lasnik

25         United States District Judge

26

ORDER GRANTING IN PART LINCOLN'S
MOTION FOR SUMMARY JUDGMENT          -8-