UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GAIL MICHELMAN,

             Plaintiff,

    v.

LINCOLN NATIONAL LIFE INSURANCE COMPANY, *et al.*,

             Defendants.

No. C10-0271RSL

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON IRWIN MICHELMAN'S CLAIMS AND DETERMINING INTERPLEADER CLAIMS

        This matter comes before the Court on "Plaintiff's Motion for Summary Judgment as to all Claims of Third Party Defendant Irwin Michelman and Determination of Interpleader Claims." Dkt. # 61. Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the Court finds as follows:

## FACTUAL BACKGROUND

        On March 24, 1999, third party defendant Irwin Michelman submitted an application for a life insurance policy covering his daughter, Elizabeth. At the time, Elizabeth was eleven years old, and Irwin was married to Elizabeth's mother, plaintiff Gail Michelman. Pursuant to the application, both Irwin and Gail were designated as beneficiaries under the

---

[1] The Court has not considered the Declaration of Irwin G. Michelman (Dkt. # 77). The document was not signed by the non-attorney declarant and is therefore inadmissible. See Section L of the Elec. Filing Procedures for the W.D.Wash.

ORDER DETERMINING
INTERPLEADER CLAIMS

policy. Irwin identified Gail as the "Owner" of the policy and himself as "Contingent owner." Although the form provided space for only one "Owner" and there was no place to identify a "Primary owner," the application noted that:

> If two or more Primary owners are named, complete special instructions and check applicable block:
>
> ☐ Joint owners with right of survivorship between them
>
> ☐ Common owners with no right of survivorship between them

Irwin checked the "Joint owners" box, but did not provide special instructions. The life insurance policy took effect on April 6, 1999. On or about May 28, 1999, Lincoln generated a "Policy Summary" that identified Gail as the "Primary Owner" and Irwin as the "Contingent Owner." There is no indication that Irwin contested these designations.

Gail and Irwin divorced in 2001. The Decree of Dissolution does not mention Elizabeth's life insurance policy or allocate ownership thereof. On February 14, 2002, Gail submitted a Change of Beneficiary form to Lincoln pursuant to her authority as "Owner" of the contract. The change removed Irwin as a beneficiary and added the couple's other daughter, Jessica. Irwin has asserted a breach of contract claim and a declaratory judgment claim against Gail based on the 2002 change of beneficiary designation.

## DISCUSSION

**A. Breach of Contract**

Irwin's breach of contract claim is based on a purported agreement between Gail and Irwin that Gail would pay the premiums on the life insurance policy and that the proceeds of the policy "would be a community asset until Elizabeth turned 18 years of age." Answer to Interpleader Complaint and Counter and Cross Claims (Dkt. # 8) at ¶¶ 5.2 - 5.3. No evidence is provided in support of this alleged agreement. Even if there were some indication that Gail had agreed to make payments for the seven years until Elizabeth turned eighteen, the agreement would fall within the statute of frauds because it could not be performed within one year. RCW

ORDER DETERMINING
INTERPLEADER CLAIMS                        -2-

19.36.010(1); Lectus, Inc. v. Rainier Nat. Bank, 97 Wn.2d 584, 588-89 (1982). Irwin's contract claim therefore fails as a matter of fact and as a matter of law.

**B. Declaratory Judgment**

Irwin challenges the validity of the 2002 change in beneficiary designation and seeks a declaration that he is entitled to the proceeds of the insurance policy. To the extent Irwin's challenge is based on the assertion that he was an "owner" of the policy, as specified in the application and/or the policy summary, the argument is unpersuasive for the reasons stated in the "Order Granting Lincoln's Motion for Summary Judgment on Irwin Michelman's Counterclaims," of even date.

Irwin also mentions that the insurance policy was not awarded to either party in the Decree of Dissolution and asserts that "community property not awarded in the decree vests in the parties as tenants in common." Opposition (Dkt. # 76) at 8. Irwin makes to effort to explain how this undisputed rule of law plays out in the circumstances of this case. At the time of the divorce, Irwin was designated as a beneficiary of the policy and a contingent (or possibly joint) owner. His interests as a beneficiary had not yet vested, however, because the "Owner" of the policy retained the right to change the person who would take as beneficiary. Mearns v. Scharbach, 103 Wn. App. 498, 511 (2000). Thus, Irwin's beneficiary status was not an existing property interest at the time of the divorce. See Aetna Life Ins. Co. v. Wadsworth, 102 Wn.2d 652, 655-56 (1984). The "community property" that devolved upon Gail and Irwin as tenants in common was the ownership of the policy, not the right to receive proceeds as a beneficiary. Id., at 661-62.

Between May 2001 and the time Elizabeth turned twenty-one, the policy was "owned" equally by Gail and Irwin, such that each was free to dispose of his or her one-half interest in the policy as they wished. Mollett v. United Benefit Life Ins. Co., 81 Wn.2d 359, 364 (1972). Again, Irwin's interest was merely that of an owner of the policy. He had no right to the proceeds or his designation as a beneficiary. When Gail changed the beneficiary designation in

ORDER DETERMINING
INTERPLEADER CLAIMS                -3-

2002, Irwin may have been able to exercise his rights as owner to undo the change or to make it clear that Gail was changing the beneficiary of only the half interest she controlled.[2]  In the circumstances presented here, the Court need not decide what the proper remedy would have been had Irwin acted between 2002 and 2008.

By operation of the policy, both Gail and Irwin's ownership interests were transferred to Elizabeth as a gift when she turned twenty-one.  Decl. of Dan Bridges (Dkt. # 62), Ex. 2 at LIN 0061.  Any ownership interest Irwin possessed as a tenant in common expired at that time.  The issue, then, is whether the beneficiary designation initiated by Gail in 2002 and remaining in place on the date Elizabeth died was effective.  There is evidence that Elizabeth was aware of the life insurance policy and the 2002 change in beneficiary designation.  Decl. of Gail Michelman (Dkt. # 64) at 2.[3]  Elizabeth did not change or attempt to change the designation after she turned twenty-one.  Such inaction, with knowledge of the policy and its provisions, has been equated with intent under Washington law.  See Nw. Life Ins. Co. v. Perrigo, 47 Wn.2d 291, 294 (1955) ("Inasmuch as decedent did not change the beneficiary, he clearly indicated that he intended the respondent, Margaret S. Perrigo, his former wife, to be the recipient of his one-half of the proceeds."); Damon v. N. Life Ins. Co., 23 Wn. App. 877, 880 (1979) ("For reasons unknown to us, the deceased did not remove his former spouse as the designated beneficiary; therefore, we must assume that he intended she would be the recipient of the policy proceeds.").

Based on the undisputed facts of this case, the Court finds that, as of the date of Elizabeth's death, Irwin was neither an owner nor a beneficiary of the policy.  Elizabeth knew that Gail was the beneficiary under the policy and chose to leave the designation undisturbed.

---

[2] Pursuant to the policy, ownership of the policy could be transferred, but any assignment would not be binding on Lincoln unless and until it were documented in writing and submitted to Lincoln. Decl. of Dan Bridges (Dkt. # 62), Ex. 1 at 2.

[3] Even if the Court considers the Declaration of Irwin G. Michelman (Dkt. # 77) on this point, Irwin has failed to allege, much less make a colorable showing, that he has personal knowledge regarding Elizabeth's state of mind during the relevant period.

ORDER DETERMINING
INTERPLEADER CLAIMS                    -4-

Gail is, therefore, entitled to 100% of the policy proceeds.

**C. Request for Arbitration**

Irwin argues that his claim against Gail for some portion of the life insurance proceeds should be submitted to binding arbitration. Under the Federal Arbitration Act, the Court's tasks are to (a) determine whether a valid agreement to arbitrate exists and (b) decide whether a particular dispute falls within the scope of the agreement. United Steelworkers of Am. v. Warrior & Gulf, 363 U.S. 574, 582-83 (1960). Through a convoluted series of draft orders, proposed modifications, and responses, the parties apparently agreed to a distribution of property and child support plan that ultimately formed the basis of the Decree of Dissolution entered by the King County Superior Court. The last provision of the CR2A Stipulation and Agreement states, "Any disputes in the drafting of the final documents or unresolved issues shall be submitted to Howard R. Bartlett for binding arbitration." Decl. of Daniel A. Clare (Dkt. # 78), Ex. B at 6.

The Court will assume, for purposes of this motion, that Gail agreed to the terms of the CR2A Stipulation and Agreement, as later modified through the correspondence between the parties. The agreement to arbitrate does not, however, reach this dispute. The agreement to arbitrate extends to any and all disputes or issues arising after the mediation was concluded on February 28, 2001, but before the final decree of dissolution was entered on May 30, 2001. This interpretation is consistent with the text of the agreement, the purpose of the mediation, and the final order of the Superior Court. The arbitration agreement is textually linked to the drafting of the final document. It would be unreasonable to presume that the promise to arbitrate "unresolved issues" was made in perpetuity when the purpose of the mediation was to achieve a consensual divorce decree. In order to ensure that all of the issues that would be incorporated into the court's final order were adequately addressed, the parties agreed that, if they realized that a particular issue had not been resolved, it would be presented to the arbitrator. It ultimately took three months to convert the parties' informal settlement into a final decree of dissolution:

whether additional issues were presented to the arbitrator during that time is not apparent from the record. Once the Superior Court entered its order, the terms of the Decree of Dissolution determined where future disputes were to be resolved. The decree specifically provides that if the parties were unable to reach agreement regarding the best way to file tax returns for the year 2000, they were to submit the issue to arbitration with Mr. Bartlett. Decl. of Dan Bridges (Dkt. # 62), Ex. 10 at 3. If, however, the parties could not divide existing retirement accounts to their mutual satisfaction, the issue would be brought for resolution before the King County Superior Court. Id., at 4. Given this context, Irwin's construction of the arbitration agreement – that all "unresolved issues" between the parties, regardless of their nature or when they arise, must be arbitrated – is unreasonable.

## CONCLUSION

For all of the foregoing reasons, plaintiff's motion for summary judgment on Irwin Michelman's breach of contract and declaratory judgment claims is GRANTED. The Court hereby declares that Gail Michelman is entitled to the proceeds of Lincoln policy number 23 7963214.

Dated this 10th day of February, 2011.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DETERMINING
INTERPLEADER CLAIMS               -6-