UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
GAIL MICHELMAN,                          )     No. C10-0271RSL
                                         )
                    Plaintiff,           )
            v.                           )     ORDER REGARDING CROSS-
                                         )     MOTIONS FOR
LINCOLN NATIONAL LIFE INSURANCE          )     SUMMARY JUDGMENT
COMPANY, *et al.*,                       )
                                         )
                    Defendants.          )
_____)

This matter comes before the Court on "Plaintiff's Motion for Partial Summary Judgment Against Defendant Lincoln National Life Insurance Company" (Dkt. # 57) and "Lincoln National's Motion for Summary Judgment on Plaintiff's Extra-Contractual Claims" (Dkt. # 66). Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:[1]

**FACTUAL BACKGROUND**

On March 24, 1999, third party defendant Irwin Michelman submitted an application for a life insurance policy covering his daughter, Elizabeth. At the time, Elizabeth was eleven years old, and Irwin was married to Elizabeth's mother, Gail Michelman. Pursuant to the application, both Irwin and Gail were designated as beneficiaries under the policy. Irwin

---

[1] This matter may be decided on the papers submitted. Defendant's request for oral argument is therefore DENIED.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT

1  identified Gail as the "Owner" of the policy and himself as "Contingent owner." Although the
2  form provided space for only one "Owner" and there was no place to identify a "Primary
3  owner," the application noted that:

4      If two or more Primary owners are named, complete special instructions and check
5          applicable block:

6      ☐ Joint owners with right of survivorship between them
7      ☐ Common owners with no right of survivorship between them

8  Irwin checked the "Joint owners" box, but did not provide special instructions. The life
9  insurance policy took effect on April 6, 1999. On or about May 28, 1999, Lincoln generated a
10 "Policy Summary" that identified Gail as the "Primary Owner" and Irwin as the "Contingent
11 Owner." There is no indication that Irwin contested these designations.

12       Gail and Irwin divorced in 2001. On February 14, 2002, Gail submitted a Change
13 of Beneficiary form to Lincoln pursuant to her authority as "Owner" of the contract. The change
14 removed Irwin as a beneficiary and added the couple's other daughter, Jessica, as a contingent
15 beneficiary. Lincoln confirmed the change of beneficiary in a letter dated February 25, 2002.
16 When Elizabeth turned twenty-one, ownership of the policy passed to her as a gift. No
17 additional changes of ownership or beneficiaries were made.

18       Lincoln was notified of Elizabeth's death on August 11, 2009. On September 21,
19 1999, Irwin's lawyer advised Lincoln that Elizabeth had died under suspicious circumstances,
20 that her death was being investigated as a homicide, that the life insurance policy was a
21 community asset of the Michelman marriage that had not been allocated in the divorce
22 proceedings, that Gail's attempt to change the beneficiary was ineffective, and that Lincoln had
23 failed to raise the beneficiary issue with Elizabeth when she attained adulthood. Irwin requested
24 that Lincoln withhold payments under the policy until the identified issues could be resolved.

25       On October 12, 2009, Lincoln contacted Gail, requesting that she submit a claim as
26

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT          -2-

the designated beneficiary of the policy and alerting her to Irwin's competing claim. Lincoln admitted that the policy proceeds were due and payable and that Gail was the named beneficiary of the policy. No explanation of Irwin's claim or the evidence in support thereof was provided. Lincoln refused to determine which of the competing claimants had the better claim and gave the claimants thirty days in which to work out their differences. If the parties could not settle their dispute, Lincoln would file an interpleader action to have the matter resolved in court. Lincoln noted that "[t]he Interpleader rules are clear that we are entitled to take such action regardless of our opinion of the relative merit of your respective claims."

Gail immediately called the claims examiner handling the matter, but could not get any information regarding the nature of or basis for Irwin's claim. On October 22, 2009, she submitted her formal claim, explained why she believed she was the only proper claimant, challenged the validity of any claim Irwin might have asserted, and again requested information regarding the grounds and proofs offered by her ex-husband to countermand the clear beneficiary designation in the policy. When she got no response, Gail followed-up with another letter, dated November 17, 2009. Gail noted that she had received correspondence from Irwin challenging Gail's designation as the beneficiary under the policy. She sought copies of any correspondence Lincoln had exchanged with Irwin during the past month.

On November 19, 2009, Lincoln wrote to both Gail and Irwin, thanking them for their correspondence and asking that they come to a mutual agreement regarding the distribution of the proceeds. Lincoln acknowledged that its records showed that Gail was the beneficiary for the policy, but noted Irwin's challenge to the 2002 beneficiary change. Lincoln gave the parties until December 10, 2009, to resolve the dispute: otherwise, the insurer would file an interpleader action.

Gail reminded Lincoln of its obligation to consider her interests to the same extent as its own. She argued in a letter dated November 23, 2009, that forcing her to litigate an interpleader action when there was proof of Irwin's claims effectively shifts the insurer's burden

of administering claims to her:

> Your last letter admits Lincoln intends on ignoring the plain language of its policy so it can avoid being sued by my ex-husband. Lincoln has acknowledged me as the sole recorded beneficiary and yet it refuses to pay the policy benefits. My ex-husband is not a beneficiary, he was removed from the policy years ago as provided by the policy itself. It would be wrong if my ex-husband sued Lincoln. But it is more wrong for the insurance carrier to put its interest in not being sued over its obligation to pay as promised under the policy.

When no response was forthcoming, Gail filed a formal complaint with the Washington Office of Insurance Commissioner.

On December 9, 2009, Lincoln's Compliance Department acknowledged receipt of Gail's letter and indicated that it had requested additional information and would review the matter. On December 16, 2009, apparently unbeknownst to Gail, Irwin's lawyer sent a letter to Lincoln indicating that the King County Medical Examiners Office had reopened its investigation into the death of Elizabeth. On January 5, 2010, Gail faxed Lincoln a letter demanding that Lincoln state what additional information it needed to complete its compliance review and when the decision would be made. She also requested a full and complete copy of the claim file including all documents and information submitted by Irwin. Gail gave Lincoln until January 8, 2010, to pay the benefits or provide the requested information. Having received no response, plaintiff filed suit on January 15, 2010.

## DISCUSSION

**A. BAD FAITH RELATED TO THE INTERPLEADER ACTION AND/OR A FAILURE TO INVESTIGATE**

Fed. R. Civ. P. 22 allows a party facing the potential of multiple liabilities to join as adverse parties all persons holding claims and to require them to interplead. The Court has already determined that Lincoln's use of the interpleader procedure was appropriate in this case. From his very first communication with Lincoln, Irwin "raised extra-policy challenges that had

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT                -4-

the potential of vitiating the acknowledged beneficiary designation and/or precluding payment to Gail entirely." Order Granting in Part Lincoln's Motion for Summary Judgment (Dkt. # 30) at 5. His claim to some or all of the insurance proceeds was at least colorable: he identified his connection to the policy and at least two potentially viable bases for his claim to the proceeds. In order to resolve the dispute, Lincoln would have to draw factual and/or legal conclusions, thereby running the risk that it would err and have to pay on the policy twice. This is exactly the risk the interpleader procedure was designed to avoid. Because Irwin and Gail had asserted claims that could expose the insurer to multiple liabilities, Lincoln was within its rights to utilize the interpleader procedure set forth in Fed. R. Civ. P. 22(a)(1). Once an interpleader was indicated, Lincoln was not required to investigate or otherwise determine which claim was more viable: that determination would be made by the Court.[2] To the extent Gail's bad faith and Consumer Protection Act ("CPA") claims are based on Lincoln's failure to investigate or adjudicate the merits of Irwin's claim, it has already been rejected. The Court will not revisit this issue.

**B.  WAC 284-30-330(1)**

Washington Administrative Code 284-30-330 identifies particular claims settlement practices that are unfair.[3] Gail argues that Lincoln violated WAC 284-30-330(1) by

---

[2] Plaintiff clearly disagrees with this statement of the law. In her declaration opposing Lincoln's motion for summary judgment, plaintiff argues that a competing claim must have enough merit to "create[] an actual obligation by the insurance company to pay the third-party" before interpleader is justified. Decl. of Gail Michelman (Dkt. # 83) at 5. Even if the Court assumes that a bald assertion of a claim against an insurance policy is not enough to warrant an interpleader action, plaintiff's understanding of the law is incorrect. A colorable claim that gives rise to the *potential* for multiple liabilities under the policy is sufficient. Requiring an insurer to investigate a competing claim until an actual entitlement is proved or disproved would vitiate the usefulness of the interpleader procedure.

[3] RCW 48.30.010(1) prohibits insurers from engaging in unfair or deceptive acts or practices in the business of insurance. Indus. Indem. Co. of Nw., Inc. v. Kallevig, 114 Wn.2d 907, 922 (1990). In addition to the unfair practices set forth in the statutes, the insurance commissioner was given the power to "define other ... acts and practices ... reasonably found by the commissioner to be unfair or

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT                              -5-

1  "[m]isrepresenting pertinent facts" when it (a) implied that Irwin's claims were being
2  investigated or adjusted in some way, (b) promised to pay the policy proceeds to the named
3  beneficiary without disclosing an exception for interpleader, and (c) failed to notify Gail that it
4  had a policy of not providing information regarding competing claims. The second argument
5  merely restates Gail's objections to the interpleader action. The whole point of this litigation is
6  to ascertain who, as between Irwin and Gail, is the proper beneficiary so that the funds can be
7  paid according to the policy provisions. Lincoln has not refused to pay the policy proceeds to
8  the beneficiary: it is simply attempting to obtain a final determination of who the beneficiary is.

9  The first argument is unsupported by the facts of this case. Lincoln clearly and
10 consistently informed Gail that an interpleader action would be filed if Gail and Irwin were
11 unable to settle their dispute. With one exception, the correspondence from Lincoln identifies
12 the conflicting claims, explains the interpleader procedure, and gives the claimants an
13 opportunity to resolve the matter between themselves. Other than the December 9, 2009, letter
14 from Judy Fawley, there is no reference to an investigation or adjustment process, and there is no
15 suggestion that Lincoln intended to resolve the dispute between the parties. Nor may Fawley's
16 letter be reasonably interpreted as a statement that Lincoln was attempting to identify the proper
17 beneficiary under the policy. The letter acknowledges receipt of a copy of the complaint Gail
18 filed with the Washington State Insurance Commissioner and notes that the Compliance
19 Department has "requested additional information for investigation." The letter does not request
20 additional information from Gail. Given the context and contents of the letter, it suggests only
21 that the Compliance Department is attempting to confirm that Lincoln's decision to utilize the

---

deceptive." RCW 48.30.010(2). Pursuant to this rule-making authority, the insurance commissioner has issued WAC 284-30-330, defining a number of unfair or deceptive acts or practices in the business of insurance. For purposes of the CPA, the commission of any of the acts defined in WAC 284-30-330 constitutes a *per se* unfair trade practice. Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 151 (1997). A single violation of WAC 284-30-330 can form the basis of a CPA claim. Kallevig, 114 Wash.2d at 923.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT            -6-

interpleader procedure was appropriate under Washington law.  There is no indication that Fawley or the Compliance Department was attempting to determine the relative strengths of the competing claims.

Nor is there any evidence from which one could conclude that Lincoln made a misrepresentation regarding an alleged policy of not providing information regarding competing claims.  Neither the policy nor a misrepresentation has been shown.  Lincoln did, in fact, disclose some information regarding Irwin's claims in an effort to enable the parties to settle their dispute.  If anything, Lincoln's policy appears to be to allow claims adjusters to use their common sense when determining what information should be imparted once an interpleader action is indicated.  Nor is there any indication that Lincoln made a misrepresentation or acted in bad faith by not disclosing its policies regarding the handling of competing claims.  Plaintiff has not identified a request for information to which the alleged policy would be responsive or any positive statement (or misstatement) regarding Lincoln's procedures for handling competing claims.  When Lincoln informed Gail of her ex-husband's claim, that he had challenged the 2002 change in beneficiary designation, and that interpleader was proper, Lincoln could reasonably believe that it had clearly and truthfully conveyed its position in accordance with its policies.  Gail obviously did not agree with the decision to interplead, but if she were misled regarding Lincoln's plan for handling the competing claims, it was merely because she hoped Lincoln would change its mind, not because Lincoln misrepresented pertinent facts.

**C.  WAC 284-30-330(2)**

Plaintiff contends that Lincoln failed "to acknowledge and act reasonably promptly upon communications with respect to" her claim, in violation of WAC 284-30-330(2).  Plaintiff concedes that Lincoln timely acknowledged almost all of her communications, but argues that the letters she received in return did not respond to her concerns.  To the extent plaintiff is arguing that Lincoln should have responded by acceding to her demands for additional investigation and/or the payment of the policy proceeds, the Court has already determined that

1  Lincoln was under no duty to do so and acted appropriately by initiating the interpleader action.

2  The record shows that Lincoln and Gail were stuck in a communication loop. On October 12, 2009, Lincoln advised Gail that Irwin had filed a competing claim, that Lincoln would not attempt to resolve the dispute between Gail and Irwin, and that the claimants could resolve their dispute informally or adjudicate the matter in court. Gail did not – and does not – believe that interpleader is fair to the insured where one party has a stronger claim than the other. She repeatedly made the argument that interpleader in such circumstances is improper because it allows the insurer to avoid its adjustment duties and gives rise to unnecessary costs and delays for the rightful beneficiary. While there are definitely policy considerations on both sides of the interpleader argument, the law is on Lincoln's side. Gail's efforts to get Lincoln to change its mind were unavailing, resulting in an exchange of correspondence that was wholly unsatisfactory to her. That does not, however, mean that Lincoln failed to "acknowledge and act reasonably promptly" upon receiving her communications. In compliance with WAC 284-30-330(2), Lincoln generally sent letters acknowledging receipt of Gail's most recent communication and repeating its decision to utilize the interpleader procedure. As to the responses that were sent, Lincoln satisfied its obligations under WAC 284-30-330(2).

Lincoln did not, however, acknowledge or act reasonably promptly upon Gail's letters of October 22, 2009, and November 23, 2009. The standards by which an insurer's response is to be measured are set forth in WAC 284-30-360. Where the insured has already submitted a claim and has directed other communications to the insurer "reasonably suggesting that a response is expected, an appropriate reply must be provided within ten working days . . . ." WAC 284-30-360(3). Lincoln did not acknowledge the October 22nd or November 23rd correspondence or otherwise respond to plaintiff in any way within the ten day period. Given the measure of promptness set forth in the regulations, Lincoln failed to acknowledge these

letters in a timely manner.[4]  A *per se* unfair or deceptive act may result in liability under the CPA only if the remaining elements of the claim, such as injury to business or property, are established.  Kallevig, 114 Wn.2d at 923.  Plaintiff declares that she incurred attorney's fees and lost time at work while trying to understand Lincoln's legal obligations and to compel the insurer to investigate the competing claims.  Decl. of Gail Michelman (Dkt. # 83) at 7-8.[5]  These losses are not related to Lincoln's failure to acknowledge receipt of the October 22nd and November 23rd letters, however.  Lincoln had already informed Gail that it would interplead the funds if the claimants were unable to resolve their dispute.  The costs Gail incurred in an unsuccessful effort to get Lincoln to change its mind would not have been avoided by a timely response, since Lincoln simply would have reiterated, as it did in later correspondence, that interpleader was appropriate.

        Plaintiff also asserts that she suffered great distress when Lincoln failed "to respond in any specific manner to my questions in regard to what Irwin's so-called competing claim was." Id. at 9-10.  Emotional damages are not compensable under the CPA.  Ledcor Indus. (USA), Inc. v. Mutual of Enumclaw Ins. Co., 150 Wn. App. 1, 13, rev. denied, 167 Wn.2d 1007 (2009).  Although they may be recovered in a bad faith action (Coventry Assocs. v. Am. States. Ins. Co., 136 Wn.2d 269, 284-85 (1998)), the harm of which plaintiff complains was not caused by a violation of WAC 284-30-330(2).  Lincoln could have met its obligations under that regulation by acknowledging the letters of October 22nd and November 23rd and repeating

---

[4] There is some authority for the proposition that an insurer need not respond to a communication if it has already addressed the issue in prior communications.  See Jordshaugen v. Port Ludlow Assocs., LLC, 149 Wn. App. 1066, 2009 WL 1133450 at * 4 (2009); Southridge Partnership v. Aspen Specialty Ins. Co., 2009 WL 1175627 at * 5 (W.D. Wash. May 1, 2009).  There is, however, some benefit in knowing that your letter has been received by the insurer, even if the issues raised are not substantively addressed.  The Court will assume that WAC 284-30-330(2) means what it says and requires a prompt acknowledgment of an insured's communication.

[5] The Court assumes, for purposes of this motion, that plaintiff's claims regarding research expenses and lost time were timely disclosed and would be admissible at trial.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT                -9-

information that had already been provided regarding the interpleader. Such a response would have been (and ultimately was) unsatisfactory to plaintiff and would not have lessened her distress.[6]

**D. WAC 284-30-330(3) and (4)**[7]

Plaintiff asserts that Lincoln committed an unfair and deceptive act when it failed to adopt and utilize reasonable standards for the prompt investigation of claims. WAC 284-30-330(3) and (4). Even if true, such a failure did not cause plaintiff any injury or loss in this case. Once Irwin asserted a colorable claim against the policy (which he did more than a month before Gail filed her claim), Lincoln was entitled to interplead this matter and was relieved of its duty to investigate the merits of either party's claim. Any investigatory standards Lincoln has or does not have are therefore irrelevant.

---

[6] Nor was the scope of Lincoln's disclosures inappropriate. Lincoln provided basic information regarding (a) the nature of Irwin's most compelling claim, (b) why Lincoln felt interpleader was appropriate, and (c) how interpleader worked. Although plaintiff found these disclosures wholly unsatisfactory (and demanded additional investigation and information), Lincoln provided enough information to justify interpleader while attempting to remain neutral between two parties who both claimed to be a beneficiary under the policy. Lincoln chose not to share Irwin's less compelling (and more sensational) accusations against Gail or to provide a copy of the claim file. As discussed in Section H, further disclosures would not have changed the fact that interpleader was indicated. WAC 284-30-330(2) requires only that the insurer "acknowledge and act reasonably promptly upon communications . . . ." Lincoln satisfied this requirement. Its decision to withhold Irwin's accusation that Gail had something to do with Elizabeth's death was not unreasonable given the facts and circumstances of the case. See Coventry, 136 Wn.2d at 280 ("[A]n insured is not entitled to base a bad faith claim . . . against its insurer on the basis of a good faith mistake."); Kallevig, 114 Wn.2d at 920 (the determinative issue in a bad faith claim is "the reasonableness of the insurer's action in light of all the facts and circumstances of the case.").

[7] Defendant's motion for summary judgment addresses these issues under the heading WAC 284-30-330(16). Dkt. # 66 at 11-12. Plaintiff's claim regarding the lack of investigation standards is based on WAC 284-30-330(3) and (4).

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT             -10-

**E. WAC 284-30-330(6)**

WAC 284-30-330(6) makes it an unfair or deceptive practice to "not attempt[] in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." This provision applies to third-party liability policies. To the extent it could possibly apply to the life insurance policy at issue here, Lincoln acknowledged its obligation to pay on the policy and made a good faith effort to obtain a final determination regarding the correct beneficiary. No violation of WAC 284-30-330(6) occurred.

**F. WAC 284-30-330(7)**

This regulation prohibits an insurer from "[c]ompelling a first party claimant to initiate or submit to litigation . . . to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings." WAC 284-30-330(7). As noted above, Lincoln has always acknowledged that it owes the full policy proceeds to someone. It has not offered to settle this dispute for an amount less than the full policy amount. WAC 284-30-330(7) is therefore inapplicable.

**G. WAC 284-30-330(13)**

Subsection 13 applies only where a claim has been denied or an offer of compromise settlement has been made. No violation of WAC 284-30-330(13) occurred.

**H. FAILURE TO PRODUCE THE CLAIM FILE**

Relying on Sharbono v. Universal Underwriters, 139 Wn. App. 383 (2007), plaintiff argues that Lincoln breached its duty of good faith when it refused to produce its claim file. In Sharbono, the scope of coverage was at issue. The insureds believed they had applied for a $2 million personal umbrella policy and needed the underwriting file to ascertain the scope of their coverage and, hopefully, settle a third-party claim. The court found that the underwriting files were relevant, that the insurer had not shown that the files were proprietary or should otherwise be shielded from disclosure, and that a reasonable person could conclude that disclosure was in the insured's best interests. Id. at 412-14. Thus, the Sharbono court concluded

that the insurer had not acted reasonably when it withheld the file and was therefore guilty of bad faith.

The Sharbono analysis does not lead to the same result in this case. It is true that Lincoln declined to turn over to Gail copies of the correspondence and documents it had received from Irwin. Lincoln did, however, provide basic information regarding the nature of Irwin's most compelling claim, *i.e.*, that he was challenging the 2002 change in beneficiary designation. Lincoln also notified Gail that Irwin's claim justified an interpleader action and attempted to explain the policy reasons and procedures governing such actions. The fact that Lincoln chose not to share Irwin's other allegations does not reflect bad faith. As far as Lincoln was concerned, it now had two potential beneficiaries, each of whom had made a claim against the policy. Even if Gail had an absolute right to her claim file,[8] whether Gail was entitled to information regarding Irwin's claim is an open question. More importantly, the production of Irwin's documents would not materially advance Gail's interests. Lincoln had already determined that an interpleader action would be filed: the disclosure of Irwin's accusation that Gail had something to do with Elizabeth's death would not change or alter that determination (and would, in all likelihood, reduce the chance of a settlement between the parties).[9] Given the facts and circumstances of this case, the insurer acted reasonably.

---

[8] Sharbono strongly suggests that there is no absolute right to the claim file. An insurer need not produce the claim or underwriting file if (a) a statute or rule prohibits disclosure, (b) disclosure would not be in the insured's best interests, or (c) the insurer demonstrates a significant need to protect the contents of the underwriting file that weighs as heavily as the insured's need for the file. Sharbono, 139 Wn. App. at 413-14.

[9] Plaintiff would perhaps argue that, had Lincoln disclosed Irwin's accusation, she would have been able to provide evidence to the contrary, such as the declaration of the investigating officer or another copy of the police report or death certificate. The whole purpose of the interpleader action, however, is to allow Lincoln to escape the untenable position of having to make credibility determinations, findings of fact, and conclusions of law based only on the unsworn and one-sided submissions of the parties. Lincoln does not have the power to compel testimony or to enforce the laws of perjury. Where two colorable claims have been asserted, the insurer need not investigate the claims and may turn the matter over to the court for resolution.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT              -12-

**I. INSURANCE FAIR CONDUCT ACT**

Plaintiff has asserted a claim under the Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015. IFCA authorizes "first party claimant[s] to a policy of insurance who [are] unreasonably denied a claim for coverage or payment of benefits by an insurer [to] bring an action in superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs." RCW 48.30.015(1). Lincoln did not, however, deny plaintiff's claim for coverage or refuse to pay benefits under the policy. Rather, it was unable to determine the appropriate payee and interpleaded the funds so the Court could make that determination. To the extent Lincoln declined to pay benefits to plaintiff immediately upon receipt of her claim, such refusal was reasonable given the facts and circumstances of the case. Plaintiff's IFCA claim fails as a matter of law.

## CONCLUSION

At the outset of this case, the Court noted that the initiation of an interpleader action is not a get-out-of-jail-free card: if plaintiff were able to show that Lincoln failed to comply with the governing claims handling statutes and regulations or had acted unreasonably, such wrongs would be independently actionable. As it turns out, however, Lincoln's handling of the claim was in good faith and, for the most part, did not violate any of the regulations identified by plaintiff. To the extent Lincoln failed to timely respond to two of Gail's letters, the failures did not cause compensable injury.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT                -13-

1          For all of the foregoing reasons, plaintiff's motion for partial summary judgment (Dkt. # 57) is DENIED, and defendant's motion for summary judgment (Dkt. # 66) is GRANTED. Plaintiff's bad faith, CPA, and IFCA claims against defendant are DISMISSED.

         DATED this 2nd day of March, 2011.

                                           /s/ Robert S. Lasnik
                                           Robert S. Lasnik
                                             United States District Judge